[No. 1569. Decided March 18, 1895.]

## T. G. STEAUBLI, *Respondent*, v. BLAINE NATIONAL BANK, *Appellant*.

SALE — IDENTITY OF PROPERTY — WAREHOUSEMAN'S RECEIPT.

A sale of a given quantity of shingles is not valid, as between the alleged purchaser and a stranger to the contract, when there is no change of possession from the seller to the purchaser, and there is no description of the shingles sufficient to enable the exact property intended to be conveyed to be identified and selected from that with which it is surrounded.

The fact that a receipt given by a mill owner is signed by the manager of his mill as "warehouseman," does not make it a warehouseman's receipt.

*Appeal from Superior Court, Whatcom County.*

*A. E. Mead*, and *Black & Leaming*, for appellant.

The opinion of the court was delivered by

HOYT, C. J.—This action was brought to recover the sum of $240, which, it was alleged, had been received by the defendant for the use and benefit of the plaintiff. The proofs disclosed the fact that it was claimed that the defendant had received the proceeds of 150,000 shingles which belonged to plaintiff. Hence the first question to be decided is as to the title to the

shingles, the proceeds of which, it was alleged, had been appropriated by the defendant. If it does not appear from the proofs that such shingles were the property of the plaintiff, it will be unnecessary to inquire further as to the rights of the parties.

His claim of title grew out of a transaction substantially as follows:  He made a loan of $200 to the proprietor of a mill engaged in the manufacture of shingles and took a note therefor, and as security for its payment received an instrument in the following form:

INTERNATIONAL MILL Co., MANUFACTURERS OF CEDAR SHINGLES,
J. B. CHOWN, *Proprietor.*

BLAINE, Wash., Nov. 18, 1891.

Received from J. B. Chown 150,000 shingles valued at $240, subject to the order of T. G. Steaubli, now in dry house at mill.        C. H. McKNIGHT,
Warehouseman.

At the time this receipt was given the shingles in question were in process of manufacture. The C. H. McKnight who signed it as warehouseman was the manager of the mill, and the so-called warehouse was a place where the surplus product of the mill was stored until ready for shipment. Did the title to the quantity of shingles therein stated pass to the holder of such receipt? It is clear that the title to no particular lot of shingles passed, for the reason that there was no segregation and setting aside of the particular shingles therein described, and in our opinion it is equally clear that no title passed to the quantity of shingles therein mentioned, for two reasons: First, because there was no proof of any uniform character or value of all of the shingles that were stored in the warehouse; and second, there was no proof which would warrant us in holding that the receipt in question constituted what is known as a warehouseman's receipt.

The only thing in the least tending to give it that character was the addition of the word "warehouseman" to the signature of McKnight, and this was entirely insufficient for that purpose in view of the fact shown by the plaintiff's own testimony, to the effect that the shingles were held by the mill company under substantially the same conditions as the product of mills of the kind is generally held. The only way that title to any specific portion of the product of the mill could pass would be by such a description as would enable the exact property intended to be conveyed, to be identified and selected from that with which it was surrounded, or by having it so set aside and taken possession of by the one claiming title thereto as to constitute a change of possession from the grantor to the grantee within the meaning of our statute as to sales of property of the value of $50 or more.

What we have said in reference to the acts necessary to pass title has of course been in view of the circumstances of this case, and it is not our intention to here decide as to the acts necessary when the controversy is between the grantor and the grantee. Here the question was between the grantee and a stranger to the contract, who, it was claimed, had interfered with the property. At the time the plaintiff rested, a *prima facie* case had not been made out against the defendant, and the motion for a non-suit should have been granted.

The judgment will be reversed, and the cause remanded with instructions to grant such motion and dismiss the action.

DUNBAR, SCOTT, ANDERS and GORDON, JJ., concur.