CARPENTER v. GLASS.

Opinion delivered November 4, 1899.

1. REPLEVIN—WHEN ACTION LIES.—To maintain replevin for chattels, plaintiffs must not only have title, general or special, in them, but must be entitled to immediate possession thereof. (Page 138.)

2. SAME—GOODS SOLD BUT NOT·SEGREGATED.—Plaintiff ordered 35 barrels of flour, to be paid for on 30 days' time. Other persons at the same place, including defendant, ordered enough flour from the vendors, together with defendant's order, to make a car-load. The entire shipment, without segregation of any part thereof, was consigned to defendant, one of the purchasers, who was instructed not to deliver the flour ordered by plaintiff until it was paid for. *Held*, that defendant was agent of the vendors to receive and deliver the flour, and that plaintiff had neither title to nor right to immediate possession of the flour ordered by him, and could not maintain replevin therefor. (Page 138.)

Appeal from Jackson Circuit Court.

RICHARD H. POWELL, Judge.

### STATEMENT BY THE COURT.

The appellee brought replevin against the appellant, and recovered judgment for fifteen "barrels of Superior Patent Flour in wood barrels, and twenty barrels of Baker's Extra Flour in one-eighth sacks," or, in default of the return thereof, $195.00, the value of the said flour. From this judgment Carpenter appealed to this court. The cause came on for trial in the circuit court of Jackson county at its January term, 1898. Appellee, Glass, testified: "Sometime about August 10th, Captain Day, a traveling man, came through here [Swifton], and wanted to make up a car load of flour, and came to me and wanted me to take some of it. I told him, provided he made up the car, I would take thirty five barrels. I gave him my order, and it was to be shipped to some of us—some one of the parties that were in the car load. He did not know at that time who would be in the car load. About August 20th—I think it was August 22d—I got my bill for the flour, as follows:

"Gordonville, Mo., August 20, 1897.
J. M. Glass, Jr., Swifton, Ark.

Bought of Winkler & Lupkes, Proprietors of the Gordonville Roller Mills. (Terms 30 days. Payable in St. Louis or New York Exchange. Prepay all charges on remittances.)

15 Brls. Sup. Pat. flour, wood, at $4.75 .$ 68.55
20  "   Bak. Extra  "  $\frac{1}{8}$ at $3.97 .....   70.40
                                            $147.95
Less freight (which please pay Carpenter)   10.95
                                            $137.00

"I offered to pay this freight to Carpenter, and to take the flour from him, but he said I could not have it. I paid $6 per barrel to old man Coffin for some of that same shipment or car load of flour." Cross-examination. "I never had the flour in my possession at any time. It was not billed to me, and I had no bill of lading for it. Carpenter showed me a letter, and probably a telegram, from the milling company, notifying him not to deliver the flour to me before I paid him for it. I told him I bought the flour on 30 days' time, and then I went to get up the money. This was on Sunday, and about

Friday following I got up the money. The flour was then in Carpenter's store in Swifton. I had not offered to pay any part of the freight prior to Friday." Re-direct. "I offered to pay for the flour the amount stated in the account." Re-cross. "I offered to pay for the flour on Saturday, by check. I did not offer the money, but offered a check which would have been paid."

Appellant, Carpenter, testified that in August Mr. Day came over and sold him some flour and wheat bran, to be shipped from Gordonville, Mo. He said also he had contracted to ship Mr. Glass and Mr. Coffin some flour, and asked to whom he should ship the car. I said: "To Mr. Glass." But, instead of that, he billed the car to me. I think that must have been Friday. Sunday morning I got a telegram to hold the car, and at the same time I got a letter from them requiring me to collect from J. M. Glass and Coffin before delivering the flour. * * * I showed this letter to Glass. He said he had contracted to have 30 days. I showed the letter to Coffin, and he said he bought on 30 days' time, but I delivered the flour to him, and he paid for it. * * * Wednesday following I went and saw Glass, and he said: "I do not know what I can do until I go to Newport. * * * The mill had instructed me to unload the flour, which I did, and the following Saturday evening Glass called for the flour. I received the following bill of lading, under which the flour in controversy was shipped to Swifton:

"St. Louis, Iron Mountain and Southern Railway Co.

"Received at Gordonville station, August 20, 1897, from Winkler & Lupkes, the following articles, in apparently good condition (except as noted below), to be forwarded to R. L. Carpenter, at Swifton, Ark., I. M. R. R., under the conditions and exceptions printed upon the back of this receipt:

| MARKS. | ARTICLES. | WG'T STATED BY SHIPPER. |
|---|---|---|
| 532. | 120 sacks of mill feed 100 lbs. | 12,000 |
| H. C. A. & N. | 30 bls. of flour        200 " | 6,000 |
|  | 16 sacks of flour    49 " | 763 |
|  | 328 sacks of flour    24 " | 7,872 |
|  |  | 26,640 |

*Gustave Jones*, for appellant.

Until the goods were actually set apart and appropriated to the appellee, the sale was incomplete, and no title passed. 50 Ark. 20; Benj. Sales, § 399; 2 Sch. Pers. Prop. § 27 *et seq*; 51 Ark. 136; Hare, Cont. 415; Benj. Sales, § 352 *et seq*. Appellee was not entitled to maintain replevin. 37 Ark. 66; 17 *ib*. 450; Wells, Rep. § 129; 71 Ill. 105. The verdict should have specified the value of each article. 10 Ark. 504; 37 Ark. 548; 53 Ark. 411.

*M. M. Stuckey*, for appellee.

The delivery by the mill to the railway company was equivalent to a delivery to appellee, and completed the sale. 43 Ark. 356; 44 Ark. 556; 58 Ark. 196; 51 Ark. 136.

HUGHES, J., (after stating the facts.) "To maintain replevin for goods, the plaintiff must not only have title, general or special, in them, but must be entitled to immediate possession thereof." *Thatcher* v. *Franklin*, 37 Ark. 66.

It appears from the evidence that the appellee contracted with the agent of Winkler & Lupkes to buy of them the flour in controversy on 30 days' time, and that they sent appellee the bill of the articles, and consigned the goods to Carpenter, with other barrels and sacks of flour of the same brand and quality, and that, before the goods were delivered to the appellee, Winkler & Lupkes instructed Carpenter not to deliver the flour to Glass, unless he paid cash for it; and that the flour was not appropriated, marked or set aside or designated to fill Glass' order. No part of the flour was ever marked, set aside or in any way designated for Glass.

A majority of the court are of the opinion that Carpenter was the agent of Winkler & Lupkes to receive the flour and deliver the same according to their directions only, and that there was, under the circumstances of this case, no such delivery of the flour to Glass as to warrant him in bringing replevin; that he was not entitled to immediate possession of the same. Though Glass may have had his remedy against the vendors for failure to comply with their contract, he could not main-

tain replevin until he had the right to the immediate possession. Neither the title nor right to possession of any specific property had passed to him. There are cases which hold, under circumstances similar to those in this case, the title and right to the immediate possession of the property passes; but we think the weight of the decisions and the better and later decisions are to the contrary. Among the cases, according to the doctrine of which it might be said that the title and right to immediate possession of the flour in controversy in this case passed to the appellee, Glass, are: *Pleasants* v. *Pendleton*, 6 Rand. 473 (1828); *Kimberly* v. *Patchin*, 19 N. Y. 334 (1859); *Mackellar* v. *Pillsbury*, 48 Minn. 396; *Russell* v. *Carrington*, 42 N. Y. 118 (1870). In these cases two judges dissented, but *Kimberly* v. *Patchin* was approved, and many other cases. In conflict with the above cases are an equal, if not greater, number of cases, among which are *Merrill* v. *Hunnewell*, 13 Pick. 213 (1832); *Woods* v. *McGee*, 7 Ohio, 413 (1836); *Dunlap* v. *Berry*, 4 Scam. 327 (1843); *Field* v. *Moore, Hill & Denio*, 418 (1843); *Courtright* v. *Leonard*, 11 Iowa, 32 (1860); *Bailey* v. *Smith*, 43 N. H. 141 (1861.)

"In *McLaughlin* v. *Piatti*, 27 Cal. 463 (1865), it was declared to be a fundamental principle of the law of sales that if goods be sold (which are mingled with others) by number, weight or measure, the sale is incomplete, and the title continues with the seller until the bargained property is separated and identified." *Caruthers* v. *McGarvey*, 41 Cal. 15 (1871); *Keeler* v. *Goodwin*, 111 Mass. 490 (1873). In *Commercial Bank* v. *Gillette*, 90 Ind. 268 (1883), the supreme court of Indiana somewhat warmly vindicated the general rule so often stated, citing many authorities, and disapproving of *Pleasants* v. *Pendleton* and *Kimberly* v. *Patchin*, which are leading cases on the other side. See also *Fry* v. *Mobile Savings Bank*, 75 Ala. 473 (1883); *Mobile Savings Bank* v. *Fry*, 69 Ala. 348; *Ober* v. *Carson*, 62 Mo. 213 (1876); *Friend & Fox Paper Co.* v. *St. Charles Starch Co.*, 6 Mo. App. 598; *Faulkner* v. *Harding*, 9 *ib.* 598; *Fitzpatrick* v. *Fain*, 3 Cold. 15; *Steaubli* v. *Bank*, 11 Wash. 426, and other cases cited in Benjamin on Sales, 321 to 327 inclusive. After reviewing the cases, Mr. Bennett, in

his note to Benjamin on Sales, says: "We have cited more cases on this point than was perhaps necessary, partly on account of Mr. Ralston's very clever and interesting monograph, inclining to the opposite view, and favoring what he calls the 'new rule,' though our examination leads us to believe that the newer cases 'prefer the old way.' Benjamin on Sales, 326–7. He further says (page 327): "Whether the title of unseparated goods from a mass has in fact passed, may be tested by a simple illustration: A buys of B 100 barrels out of 1,000, and nothing is done to distinguish or separate them. C steals one barrel from the mass. Can he be safely indicted for stealing the goods of A? It does not follow, however, in such a case that the parties are under no obligations, and have no rights as to each other before separation. If the goods are still in the possession of the vendor, he may separate at his election; and recover the price. If he declines to do so, the vendee, upon paying or tendering the price, may have an action for damages for such refusal to separate and deliver, in which he could recover the whole loss sustained. The only substantial loss to which the vendee is exposed is that if an irresponsible vendor should resell to another party, who gets possession, the vendee could not recover the goods of the second vendee, nor entire satisfaction against the vendor; but this is incident to all executory sales of personal property." At page 327 Mr. Benjamin says: "From the foregoing review of the cases, we seem to be justified in these conclusions: First. In a sale of a portion of a larger mass, the whole remaining in the possession of the vendor, with a right and power in him to make a separation, both upon principle and the weight of authority, no title passes until that is done, so as to enable the vendor to recover the price, even for goods bargained and sold. Approved in *New England, etc. Co.*v. *Standard Worsted Co.*, 165 Mass. 328, 329.

"Second. Nor to enable the vendee to maintain trespass, trover, or replevin against the vendor, or any one wrongfully taking away the goods from the vendor's possession.

"Third. If the vendee has paid the price, and the vendor refuses to separate or set apart the portion sold, the vendee

may recover back the amount paid; if not paid, damages for non-fulfillment.

"Fourth. In case the whole mass is delivered to the vendee, with a right and power in him to make the separation, the title sufficiently passes to render him liable for the price, or enable him to sue any one for the wrongful conversion of the goods, even before he has separated them.

"Fifth. A constructive delivery may be sufficient for this purpose, as where a bailee of the goods agrees to hold them, on the order of the vendor, for the benefit of the vendee."

The main principle in these cases cited by Benjamin on Sales (i. e., that before title and right to possession of a part of a mass agreed to be sold pass to the vendee, so as to enable the vendee to maintain trespass, trover or replevin therefor, there must be a separation of the part sold from the mass, by setting it aside for the vendee, or marking it, or in some way designating it or distinguishing it from the mass, for the vendee) is the doctrine of our own court. See *Berger* v. *State*, 50 Ark. 20; *Herron* v. *State*, 51 Ark. 136.

The judgment is reversed, and a judgment entered here for appellant.

WOOD, J., (dissenting). I do not differ with the court as to the principles of law announced. But to my mind there is a misapprehension of the facts, and a misapplication of the law announced to the facts of this case. It is a mistake to consider Carpenter the agent of Winkler & Lupkes to receive the flour and deliver same according to their directions only. The correct view, in my opinion, is to consider Carpenter as the agent or bailee of Glass and Coffin, the other purchasers, to hold the flour until called for by them. When the flour was shipped to, and received by, Carpenter, and same was segregated or set apart, so that each purchaser could distinguish his portion, certainly nothing further could be done, so far as the vendor was concerned, to make the sale complete. It only remained for the vendee to call and get his flour. The title had passed completely, and the ownership and right to the possesion was in the vendee. Carpenter testified: "I unloaded the flour, and stacked it separately by

itself, that is, the flour Glass was to get. Saturday evening Glass called for the flour—that is, the Saturday evening after I had unloaded it." Here was a complete separation of the Glass flour from the mass. When Glass called for his flour, and offered to pay his freight (which the proof shows he did), he was entitled to have same delivered to him, and, appellant Carpenter failing to deliver same, appellee had the perfect right to institute this suit by replevin. The vendors did not undertake to stop the flour *in transitu*, and, if they had, there was no showing that Glass was insolvent, and that he would not have complied with his contract of purchase. There is no doubt in my mind but what the judgment is right upon the facts as found by the jury, and it should be affirmed.

RIDDICK, J., concurs in the dissenting opinion.