[No. 17406. Department One. November 25, 1922.]

F. H. CROSS, *Appellant*, v. JAMES CHURCHILL *et al.*,
*Respondents.*[1]

LOGS AND LOGGING (11)—SALES (91)—STANDING TIMBER—WHEN
TITLE PASSES—SEGREGATION. A contract by which the owner of land
"sells and delivers" the merchantable timber thereon, reserving the
"piles, poles and shingle bolts," is not a present sale, but a con-
tract to sell which does not pass the title until after selection or
segregation of the merchantable timber; hence the assignor of the
contract, selling all his right and title thereunder to an assignee
agreeing to perform the contract, cannot recover damages of the
assignee through his failure to remove all the merchantable timber
within the time limited.

Appeal from a judgment of the superior court for
Lewis county, Reynolds, J., entered March 17, 1922,
upon findings in favor of the defendants, dismissing
an action on contract, tried to the court. Affirmed.

*P. C. Kibbe* and *H. L. Parr*, for appellant.

*Forney & Ponder*, for respondents.

MACKINTOSH, J.—McGuire, in June, 1916, made a
contract with the appellant in which he "sells and
delivers" to the appellant "all the merchantable
timber" on certain land, reserving the piles, poles and
shingle bolts. The contract further provided:

"First.—The party of the first part sells the mer-
chantable timber above mentioned for the price of
$1.75 per thousand, and said $800 above mentioned in
payment of the last 462,000 feet cut under the terms
of this contract, but if for any reason party of the
second part does not cut 462,000 feet of timber within
the time specified in this contract, and no extension
of time is granted as hereinafter provided for, then
and in that event, the $800 above mentioned shall be
forfeited by party of the second part to party of the

[1]Reported in 210 Pac. 776.

first part and shall be and now is agreed as liquidated damages between the parties hereto.

"Second.—Said timber is to be removed within two years from date, but said time shall be extended by party of the first part upon application by party of the second part, if the timber market becomes such that party of the second part was logging said land at a loss, or for any other reason, for which extension the sum of one dollar is paid herewith.

"Third.—From and after party of the second part begins logging, party of the second part shall pay the party of the first part the sum of $1.75 per thousand log scale at the mill for all merchantable timber cut on the above described premises, it being agreed between the parties hereto that no piles, poles nor shingle bolts shall be cut."

In August, 1916, the appellant entered into a contract with the respondents, selling and assigning all his right, title and interest in and to all the merchantable timber on the same land as evidenced by the June contract. In this contract the respondents agree that, in consideration of the assignment of the June contract to them, they would faithfully perform all the agreements therein contained to be performed by the appellant, and that they would pay the appellant twenty five cents per thousand feet, log scale, at the mill, for all timber removed by them.

The respondents proceeded to log the land, and made payments according to the terms of their contract, but did not completely remove all the timber from the land, for the reason that McGuire, although he had promised an extension of time in which to remove the timber, sold the remaining timber to third parties, who cut and removed it.

This action was brought to recover from the respondents stumpage at twenty-five cents a thousand feet for such timber as was cut by these third parties. The defense to the action is that no title passed to the

respondents, and that the timber, having been conveyed to third parties, there was no obligation on the part of the respondents to pay for the timber which they did not receive. The trial court found in favor of this defense, and dismissed the action.

The question presented by this defense is the only one that needs our attention.

At the time the contracts were executed, the property with which the parties were dealing was not completely identified; that is, the merchantable timber had to be separated from the unmerchantable timber, and the piles, poles and shingle bolts also had to be separated. The timber had not been cruised, nor had it been marked or identified in any way, and the amount of merchantable timber was not determined. It was only the merchantable timber which the respondents were entitled to and for which they must pay.

The question as to when title passes to the vendee of personal property which is to be separated from a mass depends upon the intention of the parties. This court has long ago committed itself to the doctrine that, where a certain amount of personal property from a larger mass, where all the different portions are not of equal quality or value, is contracted to be sold, title does not pass before segregation has been made, as it is impossible before that time to determine exactly what is included in the sale.

In the case of *Anderson v. Crisp,* 5 Wash. 178, 31 Pac. 638, 18 L. R. A. 419, this court, dealing with the sale of a portion of merchantable brick out of a mass of brick, called attention to the fact that the contract was not for the purchase of a portion of an indistinguishable mass, where all the component parts were of equal value, for the contract called for "merchantable" brick, and it was impossible to determine, be-

fore the segregation, what was actually sold, the court saying:

"It may be conceded that the intention of the parties will be carried into effect if it can be ascertained, yet under this contract it is impossible to ascertain not only the particular brick sold, but the actual relative number of brick sold by reason of the unsettled question of what brick were and what were not merchantable, creating an element of uncertainty in the contract which does not exist in those cases where the vendor sells a certain number of bushels of grain or a certain number of gallons of oil, or tons of hay, in an undivided mass, where all the different portions are of equal value. We think to hold that the title passed in this case would be carrying the principles of liberal construction beyond the rule laid down in any of the cases cited by appellant."

In *Pacific Coast Elevator Co. v. Bravinder,* 14 Wash. 315, 44 Pac. 544, the court was dealing with a contract between a wheat elevator company and a dealer, whereby the company "agrees and hereby sells 28,000 bu. of wheat," "all of which is to be delivered in thirty days from the date of sale, and in case such delivery is not made, the purchaser agrees to pay 15 cents per ton per month and 10 per cent. interest per annum on such amounts as remain undelivered." The court held that this contract was an agreement to sell and not a present sale, for the reason that when the wheat stood in the warehouse it was mixed with a large quantity of other wheat, and that the wheat called for was "merchantable" wheat, and that in order to determine what was merchantable it was necessary to segregate and weigh or measure and examine it.

The case of *Lauber v. Johnston,* 54 Wash. 59, 102 Pac. 873, involved the sale of "merchantable" hay which had to be separated from unmerchantable hay, and it was to be paid for as removed from the vendor's

premises. The court held it was the intention of the parties that the title should not pass until the separation had been made. The court in that case recognized the conflict of authorities upon the question as to when title passes on the sale of personal property which must be selected and separated from a larger mass, and, after referring to the case of *Anderson v. Crisp, supra,* said:

"The written contract contemplates a sale of merchantable hay only. If, as the evidence shows, some of the hay was unmerchantable, it would seem to have been the intention of the parties that title should pass to the merchantable hay as it was separated and baled by the defendant."

See, also, *Steaubli v. Blaine Nat. Bank,* 11 Wash. 426, 39 Pac. 814; *North Idaho Grain Co., Ltd. v. Callison,* 83 Wash. 212, 145 Pac. 232; 35 Cyc. 281; 5 Elliott, Contracts, § 5015.

Under these authorities, dealing with facts which do not seem to be distinguishable in principle from the facts of this controversy, we must hold that the contract here was not a present sale of the merchantable timber, but was a contract to sell, and title did not pass until some selection or segregation of the merchantable timber had been made. For that reason, the judgment of the trial court must be affirmed.

PARKER, C. J., BRIDGES, HOLCOMB, and MITCHELL, JJ., concur.