Common Pleas Court of Summit County.

THE MORRIS COAL CO. v. THE AKRON COAL CO.*

Decided March 18, 1929.

*Affirmed by Court of Appeals, March 26, 1930, by memorandum opinion, unreported.

*Taplin & Fillius* and *W. J. Laub,* for plaintiff.

*Chas. S. Sheppard* and *Commins, Brouse, Englebeck & McDowell,* for defendant.

DOYLE, J.

Plaintiff's claim is based upon the terms of a lease entered into between the plaintiff and the defendant. The lease in substance provides that the defendant shall mine certain coal lands controlled by plaintiff, and pay therefor at the rate of six cents per ton on all coal mined.

The granting clause of the lease provides that the defendant shall mine or pay for at the above indicated rate all minable coal until the same shall be exhausted, and the defendant agreed to mine, by the use of approved modern methods, until all the minable coal in the demised premises shall have been mined, or paid for.

Thereafter the lease contains the following provisions—

"Minable coal designated herein means all coal in number seven vein four feet and two inches or more thick in said vein. If and when the time shall come when said coal shall have been so far mined and removed that nothing remains unmined except such pillars as are required to support the overlying strata, and there still remains in other territory coal unmined which is to be transported through the premises hereinbefore demised, then the minable coal contained in said pillars shall be determined by survey and the royalty thereon shall at once be paid in bulk by the party of the second part, or the payment of royalty on said pillar coal shall be deferred until said pillars be worked or removed."

The theory upon which plaintiff's claim is based is that defendant abandoned operation of the mine in question while there were still upwards of 1,239,765 tons of minable coal.

The testimony tended to show that this coal consisted mainly of pillars and certain other coal which was crushed

and inaccessible. There was no testimony to show that any of the coal could have been mined under any of the modern approved methods of mining.

The plaintiff's contention, in substance, is that so long as there is coal four feet two inches or more in thickness in the mine, the defendant must mine the same or pay therefor at the royalty rate agreed upon.

Defendant contends that it is obligated only to pay for minable coal—that is, coal four feet two inches or more thick which is minable in accordance with the understanding ordinarily given to that term by courts of law, and the meaning ordinarily attaching to the word "minable" when used by persons engaged in the mining business.

In order to pass upon this question, this court must first determine the meaning of the term "minable coal" as used in this lease.

The term "minable coal" appears several times in the lease. Other than the limitation hereinbefore noted, there is no definition or explanation given as to what the parties had in mind when they used this term.

It is a fundamental rule of construction that courts will give to language its ordinary, common meaning unless the parties have clearly expressed an intention to the contrary.

This court fails to find any such intention, either in the instrument itself or in the evidence thus far adduced. It is a lease entered into and executed by parties engaged in and familiar with the coal mining business, and therefore this court must assume that when they used the term "minable coal" as distinguished from the plain generic term "coal," they intended to give to the word "minable" that meaning which would ordinarily attach when the term "minable coal" is used as a business term.

"Minable coal" has been judicially construed by the Supreme Court of Iowa, in the case of *Ellis* v. *Cricket Coal Co.*, 166 Iowa 656, 148 N. W., 887, to mean its accessibility, the condition of the earth over it, and the interference by water, whether free from or mixed with other substances; and where removal as an article of commerce is contemplated, the cost of mining and bringing the coal to the surface.

There is nothing before this court tending to show that the coal remaining within this mine is such as can come within the above definition, or can be mined by any approved modern methods of mining, or can even be mined at all. This court must therefore conclude that there is no minable coal upon which the defendant is obligated to pay royalties.

It is true that the lease recites that "minable coal designated herein means all coal in number seven vein four feet and two inches or more thick in said vein." This court construes this as a limitation placed by the parties upon what shall be considered minable coal, and not as a definition or explanation of minable coal. In other words, as construed by this court, the parties intended that the term "minable coal" should include not only those features indicated by the Supreme Court of Iowa, but should be also coal four feet two inches or more thick.

While there is evidence before this court and jury that there is coal in the mine four feet two inches thick, and more, still there is no evidence that said coal is "minable" as this court has interpreted the term.

If the contracting parties had stipulated in the lease that "the coal contained in said pillars shall be determined by survey, etc.," instead of saying that "the minable coal contained in said pillars shall be, etc.," this court might have placed a different construction upon it.

The motion of the defendant is sustained, and exceptions are given to the plaintiff.