[No. 613.   Decided November 18, 1892.]

NORTH PACIFIC LUMBERING AND MANUFACTURING COMPANY, *Respondent*, v. WILLIAM KERRON AND S. F. ALBERTS, *Appellants*.

SALE — WHEN TREATED AS EXECUTORY CONTRACT.

The title to logs will not pass under an instrument providing for the sale of all that may be cut during a certain period, when a portion of the logs were not cut at the time of its execution and cannot be distinguished from those cut prior thereto, unless there is a subsequent voluntary delivery of the logs under the bill of sale.

Although a written instrument may be called by the parties thereto a bill of sale for certain logs, yet it is merely an executory contract incapable of passing title, unless there is a subsequent voluntary delivery under it, where there is anything to be done to the logs in the way of cutting them, or putting them in the water. or floating them down to tide water and rafting them before the purchaser is bound to receive and pay for them.

*Appeal from Superior Court, Wahkiakum County.*

*Stott, Boise & Stott*, for appellants.

*Thomas N. Strong*, for respondent.

The opinion of the court was delivered by

DUNBAR, J.—On the 17th day of October, 1887, one James F. Kimball executed and delivered to respondents the following instrument of writing:

"Know all men by these presents, that I, James F. Kimball, of Cathlamet, Washington Territory, the party of

the first part, for and in consideration of the sum of one dollar, and other good consideration to me in hand paid by the North Pacific Lumbering and Manufacturing Company, a corporation, the party of the second part, the receipt whereof is hereby acknowledged, do by these presents, grant, bargain, sell and convey unto the said party of the second part, its successors and assigns, all of the following described personal property, to wit: All the sawlogs manufactured or purchased by me and now in or near the waters of the Columbia and Elokomon rivers, in Wahkiakum county, Territory of Washington, being all the sawlogs now on hand and owned by me in said county of Wahkiakum. And I do also hereby sell to said corporation all the logs now in process of manufacture, or that I may cut into sawlogs during the year of 1887, all marked as follows: A stamp mark or brand in the end, a "T," and a sap mark, a crow's foot. To have and to hold the same, to the said party of the second part, its successors and assigns, forever. And I do, for myself, my heirs, executors and administrators, covenant and agree, to and with the said party of the second part, its successors and assigns, to warrant and defend the sale of said property, goods and chattels, hereby made unto the said party of the second part, its successors and assigns, against all and every person and persons whomsoever, lawfully claiming or to claim the same. In witness whereof," etc.

On the 12th day of March following, the aforesaid Kimball executed a chattel mortgage to secure the payment of a note for $3,150 due to appellant, Kerron, which, omitting the formal part, was as follows:

"This indenture, made the 12th day of March, 1888, by James F. Kimball, of Wahkiakum county, Washington Territory, by occupation logger, to William Kerron, of Portland, Oregon, witnesseth: That said James F. Kimball, in consideration of the sum of $3,150 to him in hand paid, the receipt whereof is hereby acknowledged, does grant, bargain, sell and convey to said William Kerron all that certain personal property now in the possession of the said J. F. Kimball, in Wahkiakum county, Washington Territory, described as follows, to wit: All the sawlogs cut by

me in the year 1887, now being in or near the stream in said county called the Elokomon, and the mouth thereof, or what is called Jack Slough, which are marked or stamped on the end with the letter 'T,' some of the same being also sap marked with a crow's foot, made my cutting three notches in the following position: . ·. being all the logs now in said Wahkiakum county, W. T., marked on the end with the letter 'T,' the same containing about 1,500,-000 feet. Provided, however, that this conveyance is intended as security for the payment of the sum of $3,150, in accordance with the terms of a certain promissory note, of which the following is a copy, to wit:

$3,150.                        CATHLAMET, W. T., March 12, 1888.

One day after date, without grace, for value received, I promise to pay to William Kerron, or order, the sum of three thousand one hundred and fifty ($3,150) dollars in United States gold coin, with interest thereon from date until paid, at the rate of 10 per cent. per annum. And in case suit or action, or any legal proceeding, is taken or commenced to collect this note, or any part thereof, then I promise to pay such further sum as the court may adjudge reasonable as attorney's fees in such suit, action or legal proceedings.

                                JAMES F. KIMBALL.

"Now if the said instrument shall be paid according to the terms thereof, then this mortgage shall be void; but in case default be made in the payment of the same, or any part thereof, or if any of said property be removed or attempted to be removed from said county by any one, or be attached or levied upon by any creditor or creditors of said mortgagor, or if the holder of said instrument shall from any cause deem himself insecure, then the whole amount of said instrument shall at once become due and payable, notwithstanding any provisions therein to the contrary; and the said mortgagee, or his legal representatives, may immediately proceed to foreclose this mortgage, and have and take all necessary proceedings to sell said property, and retain and apply the proceeds thereof to the payment of said indebtedness and interest, and the costs and expenses of such proceedings and sale, and the sum of $ .............. as attorney's fees in said suit or proceedings, in addition to the fees provided for in said suit or proceedings, in addition to fees provided for in said instrument, which the mortgagor covenants and agrees to pay in case any suit or proceedings be instituted to collect said instrument, or any part thereof; and the overplus, if any there be, shall be paid

on demand to the said mortgagor or his heirs or assigns. In witness whereof,'' etc.

It is not disputed that the claims of both the contending parties against Kimball were *bona fide.*

Afterward the appellant Kerron proceeded to foreclose by notice and sale, and the sheriff of Wahkiakum county seized said logs for the purpose of selling the same to satisfy the note secured by mortgage as aforesaid, and respondent brought suit for possession of the logs against Kerron and the said sheriff of Wahkiakum county, and for damages for detention.    Verdict and judgment was for respondent, and appellant appeals to this court, alleging as error the refusal of the court to give the jury the following instructions asked by appellant:

''If the jury believes from the evidence that at the time the instrument was executed under which plaintiff claims, called the bill of sale, a portion of said logs were not cut, but were then standing in the timber, and that the logs cut after the execution of the bill of sale cannot be distinguished from those cut before, then said instrument would be simply an executory contract, and the title to the property would not pass by it, unless there was afterward a voluntary delivery of the property under it by Kimball to the plaintiff.

''If there was anything to be done to the logs in controversy in the way of cutting them or putting them in the water, or floating them down to tide water and rafting them, before the plaintiff was bound to receive them and pay the price agreed upon to Kimball at the time the instrument called the bill of sale was executed, then the contract was executory only, and the title would not pass by it unless there was a voluntary delivery under that contract by Kimball to plaintiff.

''Unless the title to the property in controversy passed to the plaintiff by virtue of the instrument called the bill of sale at the time of its execution, or by a subsequent voluntary delivery of these logs under the instrument by Kimball to the plaintiff, then the plaintiff cannot recover, and your verdict should be for the defendant.''

The instructions given by the court were as follows:

"1.  If you find from the preponderance of the whole of the testimony that the plaintiff, the North Pacific Lumbering and Manufacturing Company, and J. F. Kimball, in the spring of 1887, entered into a contract whereby said Kimball, on the waters of the Elokomon river, was to cut logs and drive to tide water, and there raft into several rafts logs of the quantity of three million feet or thereabouts, and that when so rafted they would be received by the plaintiff and paid for at the rate of $5 and $5.50 per thousand, then such contract continued, and was the lawful contract between the parties — the North Pacific Lumbering and Manufacturing Company and J. F. Kimball — and the logs remained and were the property of the said Kimball until they were made into rafts, and delivered into the possession of the North Pacific Lumbering and Manufacturing Company under such contract.

"2.  I charge you, if you believe from the preponderance of the whole of the evidence that such contract, or one substantially was made in the spring of 1887 between said parties, that is, the North Pacific Lumbering and Manufacturing Company and J. F. Kimball, and that it was changed on or about the 17th of October, 1887, by a written bill of sale, whereby said Kimball, for the consideration mentioned in said bill of sale, or any other consideration, sold all his right, title and interest in and to said quantity of logs, being the same logs first contracted for, I charge you that said Kimball had a lawful right to sell all his right, title and interest therein, and that the North Pacific Lumbering and Manufacturing Company had the right to buy such interest for any price agreed upon, and that the company immediately became and was vested with all the right, title and interest of said Kimball in said logs, but no higher or greater right than he, the said Kimball, had at the time of the execution of said written contract passed, and if you further find from the preponderance of the evidence that the defendants in this case disturbed or interfered with the rights of the North Pacific Lumbering and Manufacturing Company, so acquired by them, your verdict will be in favor of the plaintiff and against the defendants in such amount as you may find from the whole of the evidence is just.

"3. If the jury believe from the preponderance of evidence in the case that the written contract of the 17th of October, 1887, did not express the true intent and meaning of the parties, but that the same was made for the purpose of enabling the North Pacific Lumbering and Manufacturing Company to show the same to the bank with which the company was doing business in order to satisfy such bank of the necessity of the plaintiff's company for the use it had of the money the company was borrowing from the bank, and that it was not intended by the contracting parties (the North Pacific Lumbering and Manufacturing Company and Mr. Kimball) to change terms of the contract, made by them in the spring of 1887, but that the same was to continue and remain in full force, then I charge you that said contract of October 17, 1887, was not, and is not, of any binding force or effect whatever upon the defendants in this case, and the defendants are entitled to your verdict to the extent of the value of the logs taken from the defendants under the writ of replevin, or the return of the logs."

We think the instructions asked for very fairly stated the law governing the case, and that the appellants were entitled to have the jury so instructed under the pleadings and exhibits and oral testimony given at the trial. The questions were squarely before the jury, whether all the logs were cut before the execution of the bill of sale? whether a portion of the logs were standing in the tree at the time of such execution? whether those cut before could be distinguished from those cut after the execution of the bill of sale? whether there was anything left for the vendor to do to the logs before they were to be received by the vendee? etc. These were the vital questions to be determined by the jury — the essential matters in controversy; and we think the judge was mistaken when he refused to give them because, as he alleges, they were abstract propositions of law not applicable to the facts developed in the evidence. If the court had embodied the substance of the instructions asked for in the instructions it gave on its own

motion, that no doubt would have been sufficient, but we look in vain in the instructions of the court for one word of guidance to the jury on these pertinent and controlling questions.    The first and second instructions of the court were the statements of propositions which, if we under-stand their meaning, would not be disputed by either party to the action.    The third and last instruction relates en-tirely to the question of the *bona fides* of the bill of sale, and we think is fully as favorable to the appellant as it could be.    But this is no reason why the jury should have been left without light on the law governing the material issues in the cause.    The principles involved in the instruc-tions asked for by the appellants are so universally sus-tained by authority that it seems profitless to enter into an extended discussion on that subject, or a review of the au-thorities.

In *Meeker v. Johnson*, 3 Wash. 247 (28 Pac. Rep. 542), where this question was reviewed at some length, after quoting the first rule of Lord Blackburn, which is as fol-lows: "Where by the agreement the vendor is to do any-thing to the goods for the purpose of putting them into that state in which the purchaser is to be bound to accept them, or, as it is sometimes worded, into a deliverable shape, the performance of those things shall, in the absence of circumstances indicating a contrary intention, be taken to be a condition precedent to the vesting of the property," this court said: "The rule, we believe, embodies the uni-versally accepted law, both in England and America." And in this connection cites approvingly § 318, Benjamin on Sales, where that author says:

"In America, also, it is well settled that if by the terms of the contract anything is to be done by the vendor, by way of finishing the goods, or getting them ready for de-livery (not now speaking of weighing, measuring or count-ing merely) the title does not pass until this is done, unless

the contrary intention clearly appears from the terms of the sale, the language and conduct of the parties, as applied to known usages, and the subject matter of the contract."

Without now expressing any opinion as to what the evidence proved in this case, there was certain evidence tending to show that at least a portion of the logs in controversy had to be driven and rafted before they were received by respondent, and that this driving and rafting was to be done at the expense and risk of Kimball; and that a portion of the logs were in the standing tree at the time of the execution of the bill of sale. On these questions the jury should have been specifically instructed, especially when such instruction was asked.

Much has been said by the attorney for the respondent, both in his brief and oral argument, concerning the fact that this cause had been once before this court. This can have no bearing or weight in determining the issues involved in this appeal.

The only question to be considered is, were the appellants prejudiced by the refusal of the trial judge to give the instructions asked. We think it was evident that they were; and the judgment must be reversed, and the cause remanded with instructions to grant a new trial.

ANDERS, C. J., and SCOTT, HOYT and STILES, JJ., concur.