[No. 11115.   Department Two.   August 26, 1913.]

R. C. WHITE, *Respondent*, v. RESERVATION ELECTRIC
COMPANY, *Appellant*.[1]

ELECTRICITY—ACTION FOR INJURIES—OVERCHARGE OF WIRES—NEG-
LIGENCE—EVIDENCE—SUFFICIENCY. The negligence of a power com-
pany in allowing its transformer to get out of order and an undue
voltage to escape from the primary to the secondary wire supplying
customers, is for the jury, where it appears that plaintiff, in turning
a switch, formed a circuit with his arm, which would have been
practically harmless with the customary voltage, but which burned
his arm and hand nearly through, and burned off the insulation of
the wires for several inches, that on the same day, other persons
using the same circuit received shocks in turning on ordinary lights
and that the plant was shut down when the defendant was notified
of the condition and repairs made.

SAME—CONTRIBUTORY NEGLIGENCE. In such a case, the plaintiff is
not guilty of contributory negligence, in that he was attempting to
adjust an automatic switch device of his own contrivance, which in
no way increased the danger; since he had a right to assume that
things open to touch were safe; and the overcharge of electricity
was the proximate cause.

Appeal from a judgment of the superior court for Yakima
county, Grady, J., entered July 2, 1912, upon the verdict of
a jury rendered in favor of the plaintiff, in an action for
personal injuries sustained through contact with an electric
current. Affirmed.

*Englehart & Rigg*, for appellant.

*G. G. Lee* and *Henry J. Snively*, for respondent.

FULLERTON, J.—This is an appeal from a judgment in
favor of the respondent, entered in an action for personal
injuries brought by him against the appellant. The assign-
ments of error suggest but a single question, namely, the suffi-
ciency of the evidence to justify the verdict of the jury.

At the time of the accident which resulted in the injury,
the appellant was engaged in the business of supplying the

[1]Reported in 134 Pac. 807.

city of Toppenish, Washington, and the immediate surrounding territory with electricity for lighting and power purposes. The electricity was carried from its place of generation to near its point of use by a primary wire carrying a current of some 2,300 volts, and was then reduced by means of transformers to 110 or 220 volts, and by secondary wires carried thence to its actual place of use. The respondent was engaged in business in Toppenish, and for use in his business had a water tank on top of his building. To furnish power to pump water into this tank, the appellant installed an electric motor in the basement of the building, connecting it with the current from a transformer near the building. As installed by the appellant, the motor was started and stopped by means of a switch, which was closed when it was desired to start the motor and opened when it was desired to stop it. Each of these operations required the presence of some person at the motor. To open the switch and thus stop the operation of the motor when the tank became full of water, respondent installed a mechanical device of his own. He fastened one end of a wire to the arm of the switch, and carried the wire, by means of pulleys and other contrivances, to the mouth of the overflow spout of the tank and there hung a receptacle. Water overflowing from the tank into the receptacle caused the latter to pull on the wire with sufficient force to open the switch and thus break the electric current and stop the motor. All of the work of installing the motor, however, was done by the appellant, and the wires and fixtures connecting therewith were owned and controlled by it. With these the respondent's device had nothing to do, it was a simple mechanical device operated on the simplest mechanical principles.

The device, however, while it would open the switch mechanically, would not so close it; and that operation required the personal attention of some individual. Late in the afternoon of January 23, 1910, the respondent went down into the basement to start the motor. The switch, which he was

required to close to complete the circuit, was fastened to the wall of the building near where the wires entered which conveyed the electric current. These wires were insulated, and were of the usual kind in general use for like purposes. In attempting to adjust the device attached to the water receptacle so that he might close the switch, the respondent placed himself in such a position that his arm at a point just above his wrist came into contact with one of the wires, and his hand on the same arm with the other. The connection formed a circuit, with the result that the arm and hand were so severely burned as to necessitate amputation.

It was the respondent's theory that the appellant had negligently suffered the transformer to become out of repair, so that an undue voltage of electricity was allowed to escape from the primary to the secondary wire. In support of his claim, he introduced evidence to the effect that his arm and hand were burned nearly through at the points of contact, and that the insulation on the wires was burned off for several inches above and below such point; whereas a current of 110 or 220 volts would have been practically harmless under the same circumstances; that, in the morning preceding the evening of the injury, a person in a saloon was shocked and burned in an attempt to turn on an ordinary incandescent light receiving electricity from the same circuit; that wires in the same saloon connecting with other lamps blazed and burned at a point of contact, although duly insulated; that a person at the railway depot was knocked down by a shock from a similar lamp; and that the lamp and paraphernalia of a moving picture show became highly charged with electricity during the same morning. The plant was shut down from about 8 o'clock in the morning until 3:30 or 4 o'clock in the afternoon of the same day, and between these hours the appellant was notified of the dangerous conditions existing on its wires. It was testified, also, that the transformer was repaired by one of the appellant's employees shortly after the respondent received his injury.

In our opinion there was here sufficient evidence to make a case for the jury on the question of the appellant's negligence. It may be that a company engaged in the business of supplying electricity for lighting and power purposes is not an insurer of the safety of persons who must come into contact with the appliances through which the electricity is conveyed. But the company must, nevertheless, use a degree of care commensurate with the dangers incurred. The patrons of the company have the right to assume that everything that is open to touch concerning the appliances by which the electricity is conveyed can be touched with safety, and that the company has done all that human care, vigilance and foresight can reasonably do, consistent with the practical operation of its plant, to render such appliances safe. Whether in this instance the appellant had done all this was clearly a question for the jury.

It is insisted that the respondent was guilty of contributory negligence; that his injury was the result of his effort to adjust the device which he had installed for automatically opening the switch. But we find nothing in the record which indicates that this contrivance in any way increased the dangers from the electric current. It may be that, if the device had not been installed, the respondent would not have come into contact with the wires at this particular time. But coming in contact with the wires was not the proximate cause of the injury. This, under all ordinary conditions, such as the respondent had a right to expect would be maintained, was not fraught with any danger. The proximate cause of the injury was the overcharging of the wires with electricity, and for this the appellant and not the respondent was responsible. There is no error in the record, and the judgment will stand affirmed.

CROW, C. J., MORRIS, MAIN, and ELLIS, JJ., concur.