[No. 13860.  Department Two.  April 20, 1917.]

## PACIFIC POWER & LIGHT COMPANY, *Appellant*, v. W. H. WHITE *et al., Respondents.*[1]

CORPORATIONS—SALE OF STOCK—EXECUTORY CONTRACT—WARRANTY —CONSIDERATION.  A contract of sale of corporate stock containing the words "have bargained and agreed to sell and do hereby sell," which warranted that the liabilities of the corporation did not exceed the sum of $11,500, and provided for an audit of the debts and a verification thereof by examination of the books, and that, in case the indebtedness was less than that sum, the buyer was to pay the difference as part of the purchase price, is not an executed contract and does not pass title prior to the audit contemplated and acceptance thereof; hence, where the audit showed liabilities in excess of $11,500, there was a sufficient consideration to support a second warranty under which the sale was consummated, where the buyer, before paying the balance of the purchase price, demanded and received a further warranty that the liabilities did not exceed $12,506 in excess of accounts receivable, and that there were no other undisclosed or contingent liabilities.

SAME—SALE OF STOCK—WARRANTY—"LIABILITIES."  Warranties in a sale of all the corporate stock of a corporation that the liabilities of the company did not exceed a certain sum, and providing for an audit of the debts and verification by examination of the books, and making the total amount of the liabilities determinative of the purchase price, include a contingent liability for tort that materially impaired the value of the stock.

SAME—SALE OF STOCK—CONTINUING WARRANTY.  A warranty in the sale of corporate stock that there were then no undisclosed or contingent liabilities in excess of a certain sum is a continuing warranty.

SAME—SALE OF STOCK—WARRANTY OR GUARANTY—SALE TO AGENT. A warranty in the sale of corporate stock to one acting as agent for an undisclosed principal, is a contract of warranty and not of guaranty, and hence inures to the benefit of the principal.

SAME—SALE OF STOCK—WARRANTY—ACTION FOR BREACH—PARTIES. Where a sale of all the corporate stock of a corporation was consummated by a warranty signed by only part of the stockholders, an action may be maintained against the warrantors without making all the stockholders parties.

[1]Reported in 164 Pac. 602.

Appeal from a judgment of the superior court for King county, Frater, J., entered August 11, 1916, upon sustaining a demurrer to the complaint, dismissing an action for breach of warranty. Reversed.

*Kerr & McCord*, for appellant.

*Charles E. Patterson, Tom S. Patterson*, and *Hurlbut & Neal*, for respondents.

PARKER, J.—This is an action to recover damages upon a warranty. The demurrer of the defendants, White and Campbell, to the complaint of the plaintiff, Pacific Power & Light Company, having been sustained by the superior court and the plaintiff having elected to stand upon its complaint and not plead further, judgment of dismissal was rendered against it. From this disposition of the cause, the plaintiff has appealed to this court.

Counsel for appellant amplified its complaint to a considerable extent in response to a motion and demand in that behalf made by counsel for respondents. This was done before the ruling of the trial court upon respondents' demurrer. We therefore view the complaint as so amplified, as the superior court did, in determining the question of the sufficiency of the facts so pleaded to constitute a cause of action entitling appellant to relief. The controlling facts so appearing may be summarized as follows: In the negotiations leading up to and in the making of the two contracts here involved, Chas. D. Fullen was acting as agent for appellant. This fact of Fullen so acting as agent for appellant, we assume, was then unknown to respondents and all the other parties to the contracts, since the contracts themselves and the pleadings are silent upon that question. The first of the contracts reads:

"Articles of agreement, made and entered into this 8th day of September, A. D. 1910, by and between W. H. White, Thos. F. Jack, of Seattle, Washington, for themselves and A. H. Campbell, of Toppenish, Washington, for himself and

as agent for Herbert Wright and W. P. Taylor, parties of the first part, and Chas. D. Fullen, of Seattle, Washington, party of the second part.

"Witnesseth: That the parties of the first part have bargained and agreed to sell and do hereby sell unto the said party of the second part the entire capitalization and all of the stock of the Reservation Electric Company, a corporation, organized under the laws of the state of Washington and engaged in operating and conducting an electric light plant in the town of Toppenish, Washington, said stock carrying with it the entire assets of every kind and nature of the said Reservation Electric Company, together with all the rights, franchises, privileges and good will belonging thereto, for and in consideration of the sum of $25,000, of which the sum of $1,000 is paid at the time of the signing of this agreement, and the balance of said sum, to wit, $24,000, is to be paid on or before September 17, A. D. 1910, and on the receipt by said party of the second part of the shares of stock representing the capitalization hereinbefore referred to.

"The said stock shall be deposited with the Scandinavian American Bank, of Seattle, Washington, and when the entire amount thereof is so deposited, the said party of the second part shall pay the said sum of $24,000 to the parties of the first part on or before the 17th day of September, A. D. 1910.

"The parties of the first part agree and warrant that the liabilities of said corporation did not and shall not exceed the sum of $11,500 on the 1st day of September, A. D. 1910, after allowing for all accounts and claims due to the said corporation on that date; and in the event that said liabilities exceed said amount, then the same, so far as the excess over $11,500 is concerned, shall be deducted from the purchase price of said stock. The parties of the first part, through A. H. Campbell as secretary and manager, are to furnish to the party of the second part a statement showing the said liabilities as herein before mentioned, on or before the 13th day of September, A. D. 1910, and then the said party of the second part shall have the privilege of verifying the same by examination of the books, accounts and other papers and records of the said Reservation Electric Company, so that if possible the same may be done before September 17, 1910. If the indebtedness as above determined is less than $11,000, then the said party of the second part

is to pay to the said parties of the first part the difference between $11,000 and the indebtedness as determined, the understanding being, that the entire cost of said plant to said party of the second part, including the liabilities of said corporation, shall not be less than $36,000.

"In Witness Whereof, the said parties hereto have hereunto set their hands and seals the day and year first above written.                    W. H. White        (Seal)
                    "Thos. F. Jack        (Seal)
                    "A. H. Campbell        (Seal)
                    "Chas. D. Fullen        (Seal)."

After this contract was entered into, an audit was made of the books of the Reservation Electric Company, which showed liabilities of that company to the extent of $12,506.03. Appellant, before proceeding further with the consummation of the purchase of the stock, required respondents to execute and deliver a contract of warranty reading as follows:

"Mr. Chas. D. Fullen        Seattle, Sept. 19, 1910.
    "Seattle, Wash.,
"Dear Sir:  We have examined the statement of Price, Waterhouse & Co., certified public accountants, as to Reservation Electric Company, dated Sept. 17, 1910, a copy of which was furnished to us, and we are prepared now to say and warrant, that at the close of business for the month of August, 1910, the accounts and bills payable, after deducting the accounts receivable, did not and do not exceed the sum of $12,506.03.

"In addition thereto, we represent and state to you that then there were no other undisclosed or contingent liabilities existing against said company in excess of said amount.

"We further represent to you that there has been no unusual or unnecessary expenditures made during the month of September other than those in the ordinary course of business and which were necessary for carrying on the business of said Reservation Electric Company, as no increase has been made in the liabilities of said company, of which you have not been fully advised.
                    "Respectfully yours,
                        "W. H. White
                        "A. H. Campbell
                        "Thos. F. Jack."

This is the warranty here sued upon. We quote from the contract of September 8th as bearing upon the question of the consideration for the execution of this warranty contract. The sale of the stock was thereupon on that day consummated by delivery thereof to Chas. D. Fullen and the payment of the purchase price as contemplated by the contract of September 8. Appellant "was induced to purchase said stock, and did purchase said stock, and pay said valuable consideration therefor, by reason of said statements, warranties and representations made by said defendants, and believed that said statements, representations and warranties were true, and relied thereon."

In January, 1910, the Reservation Electric Company became liable to one White for damages for personal injuries received by him as the result of the negligence of that company, which liability was unknown to Chas. D. Fullen and appellant, his principal, at the time of the consummation of the sale of the stock on September 19th, and was not included in the $12,506 liabilities of that company then disclosed by respondents and warranted by them to be all the liabilities of that company. Thereafter, in October, 1910, an action was commenced against the Reservation Electric Company by White to recover damages for which it was so liable to him. Trial of that action in the superior court resulted in a judgment against that company in favor of White for the sum of $3,000, which judgment was thereafter affirmed by this court. *White v. Reservation Electric Co.*, 75 Wash. 139, 134 Pac. 807. Immediately upon the commencement of that action in the superior court, appellant notified respondents, and each of them, of the fact of its commencement and called upon them to defend the Reservation Electric Company and save it harmless from that liability. The Reservation Electric Company was ultimately compelled to pay that judgment. It is for damages so resulting to appellant in the impairment of the value of the stock of the Reservation Electric Company purchased by appellant from respondents that

recovery is sought in this action upon the warranty contract of September 19, 1910.

It is contended by counsel for respondents that: "The contract of Sept. 19th is a nullity because, prior to that time, the contract of sale was completed and title to the property had passed, so that there was no consideration whatever for this contract." It is true that the sale contract of September 8th contains the words "have bargained and agreed to sell and do hereby sell." Should we look no further to the provisions of that contract, it might well be argued that it became an executed contract passing title upon its being signed by the parties thereto. There are, however, other provisions therein which we think render it plain that both the vendors and the purchaser had something more to do before that contract could be regarded as executed and passing title. Respondents did not make delivery of the stock, nor were they required to do so until the final payment of the purchase price was made by appellant. This of itself might be regarded as merely the retention of control over the stock for the purpose of securing the purchase price, and, therefore, not inconsistent with the passing of title upon the signing of the contract. But respondents also had something to do as a prerequisite to the perfection of their right to have the purchase of the stock consummated. By the terms of that contract, they and their associates warrant that the "liabilities" of the Reservation Electric Company did not exceed the sum of $11,500. They also agreed to furnish evidence of the amount of the liabilities of that company. They also agreed that the amount of such liabilities was to become finally determinative of the exact amount of the purchase price, $25,000 being only tentatively stated as the amount of the purchase price in the contract. Plainly, by the terms of the contract, appellant was not compelled to blindly accept the information to be furnished by respondents as conclusive. It was before the acceptance by appellant of this information to be furnished by respondents and their

associates, before payment of the balance of the purchase price, and before delivery of the stock, that appellant demanded and received from respondents the warranty contract of September 19th which induced it to consummate the purchase. Assuming for the present that the liability of the Reservation Electric Company to White was one which respondents and their associates were required to disclose and warrant against under the contract of September 8th, it is plain that appellant was not required to consummate the sale under that contract until it was protected against liabilities of the nature which White had against that company, either by deducting the amount of such liabilities from the purchase price or in some other manner satisfactory to appellant, and the fact that that liability was not known to appellant at the time surely did not lessen its right to be protected against it. Such expressions as "do sell," "have sold," and "hereby sell," used in a contract of sale and which, standing alone, might indicate a present sale and passing of title, are not conclusive upon that question when used in a contract of sale other provisions of which negative the idea of title passing upon the signing of such a contract. As to when title passes under such a contract becomes a question of intention to be gathered from all of its terms. It seems clear to us, in the light of the things which, by the terms of the contract, respondents were required to do before appellant was required to consummate the sale, that the contract of September 8th did not become an executed one or pass title until after the execution of the warranty contract of September 19th, and that, when that warranty contract was executed, respondents' rights had not become so fixed and determined that they could have compelled the consummation of the sale without the doing of anything further on their part.

In the early case of *Meeker v. Johnson*, 3 Wash. 247, 257, 28 Pac. 542, Judge Dunbar, speaking for the court touching the effect of the word "sold" upon the question of passing title, as used in a sale contract, said:

"It is true that the formal word 'sold' is used in this contract . . .; but so it is in a great majority of contracts of this kind where it is not claimed by either party that they are anything more than executory contracts. This may be, and doubtless is, one expression among others, to indicate the intention of the parties; but it is only one, and is not conclusive when the other conditions in the contract indicate a different intention."

See, also, *North Pacific Lum. & Mfg. Co. v. Kerron*, 5 Wash. 214, 31 Pac. 595; *Pacific Coast Elev. Co. v. Bravinder*, 14 Wash. 315, 44 Pac. 544; *North Idaho Grain Co. v. Callison*, 83 Wash. 212, 145 Pac. 232; 6 R. C. L. 590; 35 Cyc. 281.

Having concluded that the sale contract of September 8th was still executory and had not resulted in the passing of title to the stock at the time of the execution of the warranty contract of September 19th, we think it follows that there was ample consideration to support the latter contract, since it appears by the allegations of the complaint that appellant was induced to proceed to a consummation of the sale contract by the execution of the warranty contract, at a time when it was not legally bound to do so; that is, at a time when respondents had not done all they were required to do under the terms of the sale contract entitling them to have the sale consummated. *Congar v. Chamberlain*, 14 Wis. 279.

It is contended in respondents' behalf that the warranties contained in the contracts of September 8th and September 19th have no reference to any liability of the Reservation Electric Company other than contractual liabilities. The provision in the contract of September 8th for the furnishing by respondents of a statement of the liabilities of that company, and the privilege of appellant to verify the same by an examination of the books of that company before the consummation of the sale, and the fact that the determination of the total amount of the liabilities of the company was to control the exact amount of the purchase price, might seem to furnish some ground for this contention; but when

the contract of September 8th is read as a whole, we think it is rendered plain that appellant was induced to purchase the stock of the Reservation Electric Company in reliance upon the fact that every liability of that company should be disclosed before the consummation of the sale by the payment of the purchase price. It is plain that liabilities of the Reservation Electric Company growing out of torts would lessen the value of the stock which was the subject of the sale, just as effectually as liabilities growing out of contract. It seems quite plain to us that appellant entered into the contract of sale with respondents, having in view that every liability of every nature which would affect the value of the stock would be disclosed before the consummation of the sale, and that all parties to the contract were proceeding upon that theory. We think that the word "liabilities," as appearing in both contracts, is there used in its broad sense and was intended by all parties to the contracts to include every debt or obligation of the Reservation Electric Company which would impair the value of the stock of that company. Bouvier defines "liability" as "responsibility; the state of one who is bound in law and justice to do something which may be enforced by action." Plainly, according to the allegations of the complaint, White's cause of action for damages was then such a liability against the Reservation Electric Company and one which materially impaired the value of the stock of that company.

It is contended by counsel for respondents that the warranties contained in the contracts are not continuing warranties. Looking alone to the sale contract of September 8th, there might be some ground for this contention, in view of the fact that the terms of that contract seemed to contemplate that the total amount of the liabilities should be first ascertained and the purchase price determined accordingly. It seems to us, however, that the warranty in the contract of September 19th is plainly a continuing warranty. Indeed, it was manifestly not for the purpose of warranting against

then disclosed liabilities, since they were to be then taken into consideration in the fixing of the purchase price. It could serve no purpose if not a continuing warranty looking to the future protection of appellant against other existing liabilities. Even if the warranty in the contract of September 8th was not strictly a continuing warranty, the uncompleted duty of respondents and their associates under that contract to disclose all the liabilities of the Reservation Electric Company constituted sufficient consideration for the execution of the warranty of September 19th, which plainly is a continuing one.

We have assumed so far, for convenience of discussion, that appellant is in fact the purchaser under the contract of September 8th. It is contended by counsel for respondents that appellant can in no event have the benefit of the warranty it here sues to recover upon, because it is not the beneficiary named therein, and its interest in the transaction being only that of an undisclosed principal, it has no greater rights than an assignee of its agent, Chas. D. Fullen. Counsel invoke the general rule that a warranty in the sale of personalty does not run with the property, and the assignee of the purchaser cannot avail himself of such warranty as against the original seller, citing 35 Cyc. 370. It seems to us that appellant does not stand in the shoes of an assignee or grantee of its agent, Fullen, in view of the fact that Fullen was, at the time of the execution of both contracts, in fact acting for appellant as its agent. This fact appearing by the allegations of the complaint, we think appellant's rights are controlled by another rule of law, well stated in 2 C. J. 873 as follows:

"As a corollary to the principle that the rights of the other contracting party are not affected by the disclosure of a theretofore unknown principal, it is a well established general rule that, where an agent on behalf of his principal, enters into a simple contract as though made for himself, and the existence of the principal is not disclosed, the contract inures to the benefit of the principal who may appear

and hold the other party to the contract made by the agent. By appearing and claiming the benefit of the contract, it thereby becomes his own to the same extent as if his name had originally appeared as a contracting party."

Of course, the rights of the other contracting party as against the agent, with whom he thinks he is dealing as principal, might impair the undisclosed principal's rights. This, however, is not a question to be here considered. As the facts here appear, respondents' burdens and obligations under their contract of warranty of September 19th are not increased in any respect by appellant, as the undisclosed principal, claiming under that warranty, any more than as if Fullen himself were claiming under it. Respondents are not going to be subjected to successive suits for any one breach of their warranty by successive assignees or grantees of the purchaser of the stock, which is apparently the main reason for the rule of not allowing recovery upon a warranty other than by the one to whom it was given, as pointed out by Justice Lamar in *Smith v. Williams*, 117 Ga. 782, 45 S. E. 394, 97 Am. St. 220. In this connection, counsel also invoke the rule that no one can acquire any rights under a special "guaranty" other than the one who is expressly referred to or necessarily embraced in the description of the persons to whom the guaranty is addressed, citing 20 Cyc. 1429. We think it plain, however, that the contract here involved is one of warranty and not of guaranty. While these words are often somewhat indiscriminately used, they do not carry the same meaning or refer to obligations of the same legal nature. In 12 R. C. L. 1056, the difference in legal effect between a warranty and a guaranty is stated as follows:

"It seems that derivatively the words 'warranty' and 'guaranty' import the same kind of transaction, and they are still loosely employed as though they were synonymous. In legal conception, however, a guaranty is distinguishable from a warranty. Each is an undertaking by one party to another to indemnify or make good the party assured against some possible default or defect in the contemplation of the

parties; but a guaranty is understood, in its strict legal and commercial sense, as a collateral warranty, and often as a conditional one, against some default or event in the future, whereas the term 'warranty' is generally understood as an absolute undertaking *in praesenti* as well as *in futuro*, against the defect, or for the quantity or quality contemplated by the parties in the subject-matter of the contract. In the sale of a commodity, an undertaking by the seller to answer for defects therein is construed as a warranty, though the seller uses the term 'guarantee.' "

A guarantor might be quite willing to enter into a contract guaranteeing payment of an obligation in the future by one person and yet be quite unwilling to guarantee such payment by another. In other words, the guarantor's burden might be quite different in the one case from what it would be in the other. So it will not be presumed that he intends to be bound except for the obligation of the person named in the guaranty contract. There has not come to our attention any decision or other authority holding to the view that an undisclosed principal to a contract of warranty like that here involved cannot have the benefit of such warranty to the same extent as if it were any other simple contract obligation on the part of the warrantor. We are of the opinion that appellant is entitled to the benefit of this warranty if the allegations of its complaint are true and respondents have no affirmative defense impairing such right, either against it or its agent, Chas. D. Fullen, assuming that it dealt with Fullen without knowledge of his agency for appellant.

Some contention is made in respondents' behalf that there is a defect of parties. This contention, however, proceeds upon the theory that this action is based upon the sale contract of September 8th as well as the warranty contract of September 19th, it being conceded by counsel for respondents that if the action rests upon the warranty contract of September 19th alone, there is not a defect of parties. What we have said, we think, leads to the conclusion that the cause

of action is, and can be, rested upon the warranty contract of September 19th. The sale contract of September 8th is of no consequence here except as having a bearing upon the question of consideration for the execution of the warranty contract of September 19th. In other words, the first contract is here to be considered only for the purpose of determining whether or not it was completely executed and had passed title to the stock before the execution of the warranty contract.

We conclude that the facts stated in the complaint are sufficient to constitute a cause of action entitling appellant to recover upon the contract of warranty executed by respondents on September 19, 1910. The order sustaining the demurrer to appellant's complaint and the judgment of dismissal are reversed and the cause remanded for further proceedings.

ELLIS, C. J., MOUNT, FULLERTON, and HOLCOMB, JJ., concur.