[No. 16450. Department Two. October 6, 1921.]

SUMNER K. PRESCOTT COMPANY, *Respondent,* v.
FRANKLIN TOOL WORKS *et al., Defendants,*
HENRY W. SUMNER *et al., Appellants,*
UNION NATIONAL BANK OF SEATTLE,
*Respondent.*[1]

SALES (92)—CONTRACT—GOODS TO BE MANUFACTURED—TRANSFER
OF TITLE. The general rule that no title vests in the purchaser under
a contract for the manufacture of an article not existing in specie
at the time of making the contract is not altered by the fact that
the purchaser has a right to inspect all material and pass upon
workmanship before installation, or is required to make payments
as the work progresses, or that provision is made for a lien in
favor of the manufacturer in the event of default in final payment
for the article.

LIENS (5)—CHATTEL LIENS—RIGHT TO LIEN—ASSIGNMENT OF
DEBT OR CLAIM. A corporation which has a contract for the manu-
facture of machinery parts has a right of lien thereon, though the
actual work is done by a closely affiliated corporation, where there
was no transfer of the contract by assignment or novation.

NOVATION (2)—NATURE AND ELEMENTS—SUBSTITUTION OF OBLIGA-
TION BETWEEN SAME PARTIES. Novation is a contractual relation
based upon a new contract by all the parties interested, and must
be founded upon mutual agreement, proper consideration and a
valid prior obligation to be displaced.

LIENS (5)—CHATTEL LIENS—RIGHT TO LIEN—POSSESSION OF PROP-
ERTY. Under Laws 1917, p. 229, one furnishing material to be used
in the construction of an article is entitled to a lien on the man-
ufactured article, though he never had possession of the latter.

SAME (5)—PROCEEDINGS TO PERFECT—NOTICE OF LIEN—TIME FOR
FILING. Under Laws 1917, p. 229, § 2, providing that lien claims for
work or materials on chattels must be filed "within sixty days from
the date of delivery of such chattel to the owner," the date of
last delivery of material fixes the time for beginning of the run-
ning of the period of limitation.

SAME (6)—ENFORCEMENT—DEFENSE—PAYMENT—EVIDENCE. The
fact that one liable for the cost of castings for an engine accepted
a trade acceptance which was not paid would not operate as a pay-

[1]Reported in 201 Pac. 308.

ment of the debt nor defeat the right of foreclosure of a chattel lien.

ASSIGNMENTS (22)—MONEY DUE OR TO BECOME DUE—CONTRACTS —RIGHTS AND LIABILITIES. The assignment of money due or to become due under a contract is not an assignment of the contract which would bind the assignee to perform it.

PAYMENT (11, 32)—APPLICATION—VOLUNTARY PAYMENT—RIGHT OF RECOVERY—EFFECT OF ASSIGNMENTS FOR SECURITY. Money voluntarily paid to a bank to be applied by it to a labor and material account due under a contract between the payor and the manufacturer of machinery would not render the bank liable to the payor for a misapplication of part of the money to other indebtedness owed by the manufacturer to the bank, as in legal effect the payment in the first instance amounted to a payment to the manufacturer.

BANKS AND BANKING (25)—RIGHTS AND LIABILITIES AS BETWEEN BANKS—NEGLIGENCE. Negligence of a bank in handling a trade acceptance will not support an action in favor of one to whom the bank owed no duty respecting the instrument.

Appeal from a judgment of the superior court for King county, Smith, J., entered November 10, 1920, in favor of the plaintiff, in an action to recover a money judgment and to foreclose a chattel lien, tried to the court. Affirmed.

*John B. Hart* and *F. C. Kapp,* for appellants.

*Donworth, Todd & Higgins,* for respondent Union National Bank.

*Gates & Helsell,* for respondent Sumner K. Prescott Company.

*Shorett, McLaren & Shorett,* for defendants Franklin Tool Works.

MAIN, J.—The primary purpose of this action was to recover a money judgment and to foreclose a chattel lien. After the action had been instituted, upon the motion of the defendants Henry W. Sumner and Albert E. Parker, copartners doing business under the firm name of H. W. Sumner Company, the Union National Bank was made a party, and the issues made between

the bank and the Sumner company were also deter-
mined in the action. The trial resulted in a money
judgment and a direction that the lien be foreclosed,
and in the dismissal of the cross-complaint filed by the
Sumner company against the bank. The Sumner com-
pany appeals. The preliminary facts essential to be
stated are as follows:

Sumner K. Prescott Company is a corporation or-
ganized under the laws of this state. The Franklin
Tool Works is also a corporation organized under the
laws of this state. The Union National Bank is a cor-
poration engaged in the banking business. As already
stated, Henry W. Sumner and Albert E. Parker were
copartners doing business under the name of H. W.
Sumner Company. The Prescott company were en-
gaged in the business of manufacturing machinery,
castings, and so forth. The Franklin Tool Works was
engaged in the business of constructing engines. The
Sumner company was engaged in the business of hav-
ing engines manufactured for sale. On the 15th day
of January, 1919, the Sumner company entered into a
written contract with the tool works company whereby
the latter company agreed to build and deliver on board
the cars, packed for export, two heavy marine oil
burning engines. On March 10, 1919, the tool works
company entered into a contract with Sumner K. Pres-
cott Company whereby the latter company agreed to
furnish iron castings necessary to the construction of
the engines. After these contracts were entered into,
the parties entered upon their performance. The Union
National Bank was loaning money to the tool works
company in order that it might carry on its enterprise,
and took from that company a written assignment of
all the monies due under the contract as the payments
should be made from time to time. This assignment
was accepted by the Sumner company. The contract

between the Sumner company and the tool works provided that, on the tenth day of each month, the latter company should be paid a sum equal to the amount of the labor payroll expended by that company on the engines during the preceding month, exclusive of any overhead charges, upon the presentation to the Sumner company of properly verified copies of the payroll, and further provided that a sum equal to seventy-five per cent of the amount expended for material should be paid at the same time. In carrying this out the method of procedure was for the tool works company to deliver to the bank copies of the payroll and duplicate invoices for material furnished during the preceding month, and the bank in turn presented these, together with an assignment thereof, to the Sumner company and that company made payment directly to the bank. The business proceeded in this way until the tool works company, in the month of July or August, 1919, became financially embarrassed and a trustee in bankruptcy was appointed, who for a time continued to operate the plant and carry on the work of manufacturing the engines. After a time, under an order from the Federal court, the plant was turned over to the Sumner company and they completed the work upon the engines. The Prescott company not being fully paid for the castings which it had furnished, filed a notice of lien, and, as above stated, one of the purposes of this action was to foreclose thereon. Other facts will be stated in connection with the points to which they may be particularly pertinent.

The first question to be determined is, was the title to the engines, during the time they were being constructed under the contract between the Sumner company and the tool works company, in the former or in the latter. It is the contention of the appellant that the title was in the Sumner company. The contract pro-

vided that the Franklin Tool Works agreed "to build, assemble, test and deliver on board the cars, packed for export, at its plant in the city of Seattle, county of King, and state of Washington, two H. W. Sumner Company, marine type heavy oil burning engines of six hundred shaft horse power each . . ." The contract further provided that the Sumner company had the right to inspect the building and construction of the engines. Where a contract is made for the manufacture of an article not existing in specie at the time of the making of the contract, the general rule is that no title vests in the purchaser during the progress of the work, nor until the chattel is finished and delivered, or, at least, is ready for delivery, or by some act is appropriated to the buyer. The text of Mechem, Sales, vol. 1, p. 630, states the rule as follows:

"The question of the time when the title will pass to goods which have been ordered to be manufactured is involved in some little conflict of decision, though the decided tendency of the authorities in the United States is clear. Under a contract for the manufacture of an article, as for the building of a ship or the construction of any other chattel, not existing in specie at the time of making the contract, it is the general rule that no title vests in the purchaser during the progress of the work, nor until the chattel is finished and delivered, or, at least, is ready for delivery, and, by tender or other equivalent act, is appropriated to the buyer."

This court, in *North Pacific Lumber & Mfg. Co. v. Kerron,* 5 Wash. 214, 31 Pac. 595, has adopted substantially the same rule. The appellant seeks to take the present case out of the rule by reason of the fact that the Sumner company, under the contract, had a right to inspect all material before installation and pass upon all workmanship, and the further fact that the contract provided for payments as the work progressed. The fact that the Sumner company had the

right of inspection and was required to make payments as the work progressed did not conclusively establish that the title passed to the Sumner company. *Andrews v. Durant*, 11 N. Y. 35, 62 Am. Dec. 55; *Clarkson v. Stevens*, 106 U. S. 505. They are circumstances to be taken into consideration in determining what the parties intended by the language in their contract. It is also said that since the contract provides that, in the event default is made in the final payment for the engines for a period of ninety days after they are ready to be delivered, the tool works company shall be entitled to a lien for the unpaid portion of the indebtedness, that this shows an intention that title should be in the Sumner company. The final payment was due when the engines were delivered properly packed for export, as provided in the preceding paragraph of the contract which is above quoted. As we read this portion of the contract, it is nothing more than providing that the Sumner company shall have a right to a lien after the engines have been completed, properly packed and delivered. Prior to that time there is no provision in the contract covering the matter of liens. There is nothing in the contract or in the evidence which would take the case out of the general rule stated by Mechem, to the effect that the title, during the period of construction, is in the manufacturer.

The title being in the tool works company, the appellant further contends that the Prescott company had no right to maintain an action to foreclose the liens, because it is claimed that all rights under the castings contract were transferred by assignment or novation from the Prescott company to the American Foundry Company, and if any right to a lien exists it is in the latter company. The Prescott company and the American Foundry Company were closely affiliated. Sumner K. Prescott owned all the stock in the Prescott com-

pany, with the exception of one share; he owned seventy-five per cent of the stock in the American Foundry Company. The business of the two companies was conducted from the same offices. It was the practice, when orders came in, to send them to the factory, where the articles required could be manufactured promptly. In this case the castings were in fact manufactured by the American Foundry Company and were billed direct by that company to the tool works company. In this way it saved double entry on the books, as would be required if the American Foundry Company had delivered to the Prescott company and that company in turn to the tool works company. There was no assignment of the contract, or pretense of assignment, from the Prescott company to the American Foundry Company. At all times the Prescott company was under obligations to fulfill the terms of the contract which it had entered into, and were the Sumner company seeking recovery upon the contract, there is no way by which it could maintain an action thereon against the foundry company. The contract was not transferred by assignment or novation from the Prescott company to the American Foundry Company. A novation is a new contractual relation. It is based upon a new contract by all the parties interested. It must have the necessary parties to the contract, a valid prior obligation to be displaced and proper consideration, and a mutual agreement, as was pointed out in the cases of *Sutter v. Moore Inv. Co.*, 30 Wash. 333, 70 Pac. 746, and *Osburn v. Dolan*, 7 Wash. 62, 34 Pac. 433. The fact that the castings were actually made in the American Foundry Company's plant and delivered by it direct to the Sumner company did not defeat a right of the Prescott company to proceed upon its contract and foreclose the lien.

10—117 WASH.

It is next claimed that the Prescott company's lien must fail because it never had possession of the engines. It is argued that the lien statute (Laws of 1917, p. 229) is not broader than the common law rule, and to enforce a lien for work done upon a chattel, possession was a necessary prerequisite. The statute provides, § 1 thereof,

"Every person, firm or corporation who shall have performed labor or furnished material in the construction or repair of any chattel at the request of its owner, shall have a lien upon such chattel for such labor performed or material furnished, notwithstanding the fact that such chattel be surrendered to the owner thereof."

The statute, as we view it, is broader than the common law and gives the right to one furnishing material to a lien, even though such material be not in possession of the manufacturer. Under the statute, the Prescott company, even though it did not have possession of the engines, had a lien for the balance owing to it.

It is next contended that the notice of the claim of lien was not filed within the time required by law. Section 2 of the lien statute, Laws of 1917, p. 229, provides that, in order to make such lien effectual, the lien claimants shall, "within 60 days from the date of delivery of such chattel to the owner," file in the office of the county auditor a lien notice. The last delivery of castings under the contract was made by the Prescott company on July 19, 1919, and the lien notice was filed on September 15, 1919, which was within the sixty-day period. The appellant argues, however, that there could be no lien under the terms of the statute, if the tool works company were the owner, unless the lien notice was filed "within 60 days after the construction of the engines commenced." The notice of lien was filed within the time required by law.

Finally, upon this branch of the case it is contended that the amount of the judgment should be materially reduced. It is claimed that certain of the castings furnished were defective and that the tool works company was required to do a considerable amount of work in putting them in proper condition to be used; and second, that there should be a material reduction on account of a trade acceptance. As to the work having been done on the castings necessary to fit them for use, the evidence, without reviewing it in detail, is too indefinite to enable the court to hold that an offset of this character should be allowed. The Prescott company at all times was ready to take back any castings that were defective, and had so notified the tool works company.

The other matter on which a reduction was claimed was that of a trade acceptance. On June 16, 1919, the American Foundry Company drew a trade acceptance for $4,487, which was presented to the Franklin Tool Works and accepted by that company and made payable at the Georgetown branch of the Union National Bank. This was deposited in the Seattle National Bank on July 3, 1919, and credit was given therefor. It was payable twenty days after date. The due date was July 7, the preceding day being a Sunday. When the trade acceptance reached the Georgetown branch of the Union National Bank there were not sufficient funds of the tool works company to cover it, and it was returned to the Seattle National Bank and that bank charged back to the depositor, with the consent and approval of Mr. Prescott, the amount thereof. Prescott also testified that the trade acceptance was delivered to the Seattle National Bank for collection. Its right to charge back cannot be doubted. The trade acceptance, not having been paid, did not operate as a payment of the debt nor defeat the right of foreclosure. 27

Cyc. 270; *German Bank v. Schloth,* 59 Iowa 316, 13 N. W. 314; 18 R. C. L. p. 970.

We will now take up the consideration of the case between the Sumner company and the Union National Bank. By its cross-complaint, the Sumner company sought to recover against the bank monies which it had paid thereto and which it is claimed were not applied upon the indebtedness of the tool works company which was created in the manufacture of the engines. It is also claimed that it was the duty of the bank, before presenting the payrolls to the Sumner company, to see that the payrolls had been paid. The bank did not take an assignment of the contract, but only ''all monies due or to become due under the terms'' thereof. The assignment of money due or to become due under an executory contract is not an assignment of the contract and the assignee is not bound to perform it. *Lunt v. Lorscheider,* 285 Ill. 589, 121 N. E. 237; *Butler v. San Francisco Gas and Elec. Co.,* 168 Cal. 32, 141 Pac. 818; *National Surety Co. v. Maag,* 43 Ind. App. 16, 86 N. E. 862. Under the assignment, the bank owed no duty to the Sumner company to see that the money which was received from that company was properly applied upon the payroll by the tool works company. The bank took the assignment of the monies due on the contract merely as security for the advancement that it was making the tool works company.

It is further claimed that the bank applied certain of the money upon the indebtedness which the Franklin company owed it other than that contracted by the latter company in the manufacture of the engines in question. Even if this were the fact, the Sumner company would not have a right to recover from the bank. That company paid the money voluntarily, and the case stood very much as though the money had been paid by the Sumner company to the tool works company and that

company in turn having made payment to the bank. If this had been the procedure it would hardly be contended that the Sumner company had any right of action against the bank. In legal effect, this was the transaction. *Winslow v. Anderson,* 78 N. H. 478, 102 Atl. 310; *Merchants' Insurance Co. v. Abbott,* 131 Mass. 397. In the last case, speaking of a similar situation, it is said:

"The case stands just as if the money had been paid by the plaintiffs to Abbott, and by Abbott to these defendants, in which case there could be no doubt that, while the plaintiffs could recover back the amount from Abbott, neither Abbott nor the plaintiffs could recover the amount from these defendants. The fact that the money, instead of being paid by the plaintiffs to Abbott, and by Abbott to these defendants, was paid directly by the plaintiffs to these defendants, does not make any difference in the rights of the parties. The two forms do not differ in substance. In either case, Abbott alone is liable to the plaintiffs, and these defendants hold no money which *ex aequo et bono* they are bound to return either to Abbott or to the plaintiffs."

It is also claimed that recovery should be against the bank because the Georgetown branch thereof, at which the trade acceptance was made payable, did not promptly return it to the Seattle National Bank. The trade acceptance was received by the Georgetown branch one day after its due date, or the 8th of July, and was returned on the twelfth. What the effect of holding the trade acceptance for the time mentioned would have been if a party to the instrument were suing, it is not necessary here to determine. The trade acceptance was drawn by the American Foundry Company and accepted by the Franklin Tool Works. The Sumner company was not a party to it and, so far as the bank was concerned, was not known in the transaction. The bank owed no duty to the Sumner company arising out

of the trade acceptance. If it owed no duty it would not be guilty of negligence, but if it owed a duty but did not owe it to the Sumner company that company could not maintain an action. *Savings Bank v. Ward*, 100 U. S. 195. Upon this question, in Shearman & Redfield, Law of Negligence (6th ed.), vol. 1, § 8, it is said, with reference to duty as an essential element of negligence:

"The first element of our definition is a duty. If there is no duty, there can be no negligence. If the defendant owed a duty, but did not owe it to the plaintiff, the action will not lie. And there can be no duty to do any act which one has no legal right to do. The plaintiff must state and prove facts sufficient to show what the duty is, and that the defendant owes it to him."

There are two or three minor questions discussed in the briefs and which have not been mentioned in this opinion. They have been considered and we do not deem them to possess substantial merit. To discuss them here in detail would seem to unnecessarily prolong this opinion.

The judgment will be affirmed.

PARKER, C. J., TOLMAN, MITCHELL, and HOLCOMB, JJ., concur.